## H. & L. M. WARTEN COTTON CO. v. SOUTHERN RY. CO. (8 Div. 355.)

(Supreme Court of Alabama. Nov. 2, 1922.)

1. **Carriers ⬉85—Notice to shipper-consignee not required, where other party designated to notify.**

Ordinarily, the consignee of goods is the only proper party to be notified of their arrival, but under Code 1907, § 5622, where shipper is also consignee and designates another whom the carrier is to notify at the place of delivery, notice is properly given to the latter pursuant to such section, and notice to the shipper consignee is not required.

2. **Carriers ⬉167—Instruction on termination of carrier's liability as to cotton injured by fire in warehouse held practically correct as applied to facts.**

In action for failure to deliver cotton and for its injury by fire while held by defendant as common carrier, wherein it appeared that the shipper was consignee and the bill of lading provided for notice of its arrival to another, and for liability as warehouseman after 48 hours from such notice, and evidence showed its arrival at destination on July 24th and injury by fire in the carrier's warehouse nine days later, an instruction inaccurate in stating that, if notice was given consignee of its arrival on July 24, "defendant's duty and liability as a carrier terminated," was perhaps misleading, but was practically correct when applied to the facts, evidence showing notice on July 24, nine days before the admitted date of injury.

3. **Carriers ⬉85—Examination of shipment by consignee actual notice of arrival.**

Where cotton consigned to shipper's order arrived on July 24 and the notify consignee saw and examined it on July 26, and knew from whence it came, this was notice to him of its arrival.

4. **Trial ⬉253(10) — Evidence held not to show legal delivery of cotton by carrier so as to render charges subject to criticism as ignoring evidence.**

Evidence that one to whom notice of arrival of cotton was to be given by the carrier was allowed to remove it from the car to the carrier's warehouse to save demurrage merely does not tend to show that the carrier surrendered possession or delivered it to him in any legal sense, and would not support such a conclusion, so as to render charges subject to criticism as ignoring evidence tending to show it was wrongfully delivered to him, thereby fixing liability as carrier at such time.

5. **Carriers ⬉85—Telephone notice of arrival of goods sufficient under statute.**

Code 1907, § 5604, requires that notice of freight arrivals shall be by mail or otherwise, and notice by telephone is sufficient, whether pursuant to agreement or otherwise.

6. **Principal and agent ⬉101(2) — General agreement for notice of freight arrivals between consignee and railroad binding on shipper.**

Where one to whom freight was regularly consigned made a continuing agreement with the carrier that notice of arrivals could be made by phone, the agreement was in legal effect the same as a special contemporaneous agreement with respect to an order notify shipment, and binding on the shipper though made at a time when consignee was not the shipper's agent.

7. **Evidence ⬉266—In suit against carrier for injury to cotton by fire, consignee's statements as to quality made on arrival held admissible to show knowledge of character thereof.**

In action against a carrier for injury to cotton by fire, as tending to show the notify consignee knew the character of the shipment and his own relation thereto at the time he examined it two days after arrival, it was competent to show that he said the cotton did not suit him, and thought he would get something off; the conversation being about the condition of the cotton.

8. **Appeal and error ⬉1062(3)—Error in submitting affirmative charge on count not prejudicial.**

Where counts 1 and 2 were for a carrier's failure to deliver cotton, and count 5 for injury by fire while it was held as a common carrier and under the evidence recovery under count 5 could not have exceeded the amount authorized under 1 and 2, and the same evidence would have supported a recovery under any count, and there could have been no recovery under any count if it were found that the notify consignee had not received notice of its arrival, and the verdict carried with it a finding of fact that there was such notice, and had count 5 been submitted on that issue the same finding of fact must have been determined against plaintiff, there was no prejudicial error in submitting defendant's affirmative charge on count 5.

Appeal from Circuit Court, Morgan County; Osceola Kyle, Judge.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by the H. & L. M. Warten Cotton Company against Southern Railway Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

The complaint is in three counts. Counts 1 and 2 are for failure to deliver 25 bales of cotton received by defendant as a common carrier to be transported and delivered at Clayton, N. J. Count 5 is for "injury" to the same cotton by fire, "while held by the defendant as common carrier."

Defendant pleaded the general issue and special plea 3 as follows:

"(3) That in and by the contract of shipment upon which plaintiffs' action is based, it was expressly stipulated and agreed, in substance, that in the event the cotton in question was not removed by the party entitled to receive it within 48 hours after notice of the arrival of said cotton had been duly sent or given, said cotton might be kept in the car, depot, or place of delivery of the carrier, or warehouse, subject to reasonable charge for storage and to carrier's responsibility as warehouseman only; that in and by said contract said shipment of cotton was consigned to the order of plaintiffs, at Clayton, N. J., notify Clayton Shoddy & Cotton Mills, at Clayton, N. J.; that said cotton reached said destination, on, to ·wit, July 24, 1918, and notice of the arrival of said shipment was given said Clayton Shoddy & Cotton Mills on, to wit, July 24, 1918; that after the arrival of said cotton and the notice thereof, given as aforesaid, said cotton was stored in the warehouse of the carrier at the point of destination, said warehouse being in a reasonably safe condition for the storage of cotton; that the cotton was burned by a fire originating from a cause unknown to the defendants, and without the agency of the defendants, on August 2, 1918."

Demurrers to plea 3 were overruled.

It appeared without dispute that the cotton in question was shipped from Decatur, Ala., to Clayton, N. J., and, as the bill of lading shows, was consigned to the order of the shippers, "H. & L. M. Warten Cotton Company, notify Clayton Shoddy & Cotton Mills, Clayton, New Jersey;" that the cotton had been sold for cash to said cotton mills, and a draft was drawn on said cotton mills with bill of lading attached, and delivered to the shippers' local bank for collection in due course; that the cotton arrived at its destination on July 24, 1918, and on July 26th it was removed to a warehouse of the carrier, where it remained until it was destroyed by a fire, which burned the warehouse and freight office on August 2, 1918.

David Potash, the owner of said cotton mills, and a resident of Clayton, testified that he had no notice from the carrier, nor from any one, of the arrival of the cotton, but that he saw the cotton after the fire, in which condition it was worth about $50; its previous value having been 17 cents a pound.

The carrier's local agent at Clayton, one Alexander, testified that he notified Potash personally by telephone of the arrival of the cotton, at 8 a. m. on the same day, and that afterwards he talked with him about the cotton, and at his instance it was removed by him from the car and placed in the warehouse to avoid demurrage; and Potash looked at it after it was placed in the warehouse, and complained of its quality.

This witness testified further that the fire was of unknown origin; that—

"the cotton was burned on the outside, and we had to bury it for three· weeks to get the fire out, * * * and then we put it in a box car and shipped it, and when it got to Philadelphia it was sold."

The bill of lading contained the provision that—

"For loss, damage or delay caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination * * * has been duly sent or given, the carrier's liability shall be that of warehouseman only."

At defendant's request, the following instructions were given to the jury:

"C. If you find from °the evidence defendant and its connecting lines safely transported the cotton to its destination, informed Clayton Shoddy Cotton Mills, at Clayton, N. J., of its arrival of or about July 24, 1918, defendant's duty and liability as a carrier terminated.

"(X) If you are reasonably satisfied from all the evidence that David Potash, as the owner and proprietor of the Clayton Shoddy & Cotton Mills at Clayton, N. J., saw and examined the cotton in question on July 26, 1918, at the railroad station at Clayton, N. J., then I charge you this was notice to him of the arrival of said cotton.

"(5) If you believe the evidence you cannot find for the plaintiff under count 5 of the complaint.

"(AA) If the cotton was delivered under the contract of shipment at Clayton, N. J., and was placed in a reasonably safe place, and if the agent of the Pennsylvania Railroad gave notice to Clayton Shoddy & Cotton Mills of the arrival of this said cotton immediately upon its arrival, and if said cotton was burned on August 2, 1918, without fault of defendants, then your verdict should be for defendants."

From a verdict and judgment for defendant plaintiff appeals.

Callahan & Harris, of Decatur, for appellant.

It was error to give charge 5 for the defendant. 78 Ala. 589; 83 Ala. 201, 3 South. 432. The direction in a bill of lading to notify a named person shows that such person is not intended as the consignee; and if the carrier surrenders possession in such manner as to amount to a delivery without payment of the draft, its liability arises eo instante. 170 Ala. 617, 54 South. 168. Plea 3 was subject to demurrer. 125 Tenn. 658,

148 S. W. 671. The admission of the agreement by the cotton mills for notice of the arrival of freight to be given over the telephone was error. 192 Ala. 373, 68 South. 283.

S. A. Lynne, of Decatur, for appellee.

Brief of counsel did not reach the Reporter.

SOMERVILLE, J. ˙ The facts set up in defendant's special plea, numbered 3, show that the status and obligations of a common carrier had terminated before the destruction of the cotton, and exhibited a complete defense to counts 1, 2, and 5 of the complaint, upon which the cause was tried.

[1] The notice of arrival of the cotton at its destination was, under the terms of the bill of lading, properly given to the Clayton Shoddy & Cotton Mills. Ordinarily the consignee is the only proper party to be notified, but where the shipper is also the consignee, and designates some other person whom the carrier is to notify at the place of delivery, notice to the shipper consignee is not required. Code, § 5622; Collins v. A. G. S. R. R. Co., 104 Ala. 390, 397, 16 South. 140; So. Ry. Co. v. Adams Mach. Co., 165 Ala. 436, 51 South. 779. In citing the Collins Case, supra, to the point in hand, we of course do not mean to approve the dictum in that case that in a case like this the direction to notify a designated person of the arrival of the shipment makes him virtually the consignee, and authorizes delivery of the goods to him, a statement which seems to be at variance with all the authorities, including our own decisions. A. C. L. R. Co. v. Dahlberg, etc., Co., 170 Ala. 617, 54 South. 168; 10 Corp. Jur. 359, § 372. The demurrers to plea 3 were properly overruled.

As stated by the trial judge in his oral charge to the jury, the real and decisive question in the case was whether or not defendant notified the Clayton Shoddy & Cotton Mills of the arrival of the shipment, more than 48 hours before the cotton was burned.

[2] Charge C, given for defendant, is perhaps misleading in its statement that, if notice was given the Cotton Mills on July 24th, "defendant's duty and liability as a carrier terminated." We apprehend that the court did not mean to say that they terminated immediately upon the giving of the notice, but only before the burning of the cotton. As applied to the facts—defendant's evidence tending to show notice given on July 24th, nine days before the admitted date of the burning—the inaccuracy noted was immaterial, and the charge was practically correct.

[3] Charge X was a correct statement of the law, based on tendencies of the evidence. Defendant's evidence tended to show that Potash saw and examined this particular cotton on July 26th, and that he knew from whence it came.

[4] Charge AA was also a correct statement of the law applicable to tendencies of the evidence. The chief criticism of charge AA, and also of charge C, is that they ignore evidence which tends to show that the cotton was wrongfully delivered to Potash, thereby fixing defendant's liability as carrier at that time. We think, however, that the assumption that the evidence has such a tendency is wholly unwarranted. The fact that Potash was allowed to remove the cotton from the car to defendant's warehouse near the station, where it remained thereafter, in order to save demurrage merely, has no tendency to show that defendant surrendered possession of the cotton, or delivered it in any legal sense, to Potash, and would not support that conclusion.

[5] The written agreement between defendant and Potash that notice of freight arrivals could be made by telephone was of no material importance. Section 5604 of the Code requires that notice of such arrivals shall be given by mail or otherwise, and we have heretofore held that the manner of notice is immaterial. So. Ry. Co. v. Adams Mach. Co., 165 Ala. 436, 446, 51 South. 779. The question at issue was whether Potash had notice, and notice by telephone was equally effectual with or without the agreement.

[6] The objection to the admission of the agreement is based upon the theory that Potash was the agent of the shippers to receive notice only pro tempore, and that his agreement with the carrier, made about a year previous, when he was not their agent, could not be binding on his principals, and was as to them res inter alios acta. The answer to this contention is that the agreement was a continuing one, and was therefore in legal effect the same as a special contemporaneous agreement with respect to this shipment; and that, in the absence of any statutory or contractual specification of the mode of notice, the agent might agree as to the mode, consistently with the rights of his principals, and without exceeding his authority in the premises.

[7] As tending to show that Potash knew the character of the shipment, and his own relation to the cotton, at the time he examined it, it was clearly competent for defendant to show that he said the cotton did not suit him, and he thought he would get something off; the conversation being about the condition of the cotton.

[8] Conceding without deciding that a plaintiff, as here, may recover on a count declaring on an injury to the goods while held by the defendant as a common carrier, where the evidence shows that the shipment was substantially destroyed and no part of it delivered to the consignee, it seems clear

that the giving of charge 5 for defendant, though erroneous, was not prejudicial error for reversal of the judgment.

In the first place, although the form of the action is different under count 5, yet under the evidence recovery under count 5 could not have exceeded in amount the recovery authorized under counts 1 and 2, and the same evidence, viz., of destruction of the cotton by fire before the termination of defendant's liability as carrier, would have supported a recovery under any of the counts.

In the second place, there could be no recovery under any count, either for failure to deliver, or for injury merely, unless the jury found on an issue of fact that the Shoddy & Cotton Mills did not receive or have due notice of the arrival of the cotton.

The jury's verdict for defendant on counts 1 and 2 carried with it, therefore, a finding of fact that there was such notice, and had count 5 been submitted to them on that issue of fact—as it must have been—it is clear that the same finding of fact must have determined the issue against the plaintiff.

We find no prejudicial error in the record, and the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.